IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| SSC8, LLC and WMAC 2014, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>NANCY C. MILLAN, in her official capacity as Hillsborough County Tax Collector, and CHARLES W. THOMAS, in his official capacity as Pinellas County Tax Collector,<br><br>Defendants. | Civil Action No. |

**COMPLAINT WITH PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF REQUESTED**

Plaintiffs SSC8, LLC ("SSC8") and WMAC 2014, LLC ("WMAC") bring this action for preliminary and permanent injunctive relief against Nancy C. Millan, Hillsborough County Tax Collector, and Charles W. Thomas, Pinellas County Tax Collector, each in their official capacity.

**Jurisdiction and Venue**

1.

This is an action for injunctive relief pursuant to 28 U.S.C. § 1983 based upon the continuing violations of Plaintiffs' rights under the Fourteenth Amendment to the United States Consitution. This Court has jurisdiction pursuant to 28 U.S.C.

§ 1343.  This Court also has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2.

Venue lies in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because some of the offices of the Defendants are in Hillsborough and Pinellas Counties and a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this judicial district.

**Parties**

3.

SSC8 is a Florida limited liability company with its principal place of business in Miami Lakes, Florida.  SSC8 has in the past and anticipates in the future bidding on tax certificates that are auctioned by Defendants.

4.

WMAC is a Missouri limited liability company with its principal place of business in Atlanta, Georgia.  WMAC has in the past and anticipates in the future bidding on tax certificates that are auctioned by Defendants.

5.

Defendant Nancy C. Millan is the Hillsborough County Tax Collector.  She is being sued in her official capacity for prospective declaratory and injunctive relief.  As Tax Collector, Ms. Millen's responsibilities include overseeing all aspects of tax

collection handled by the Tax Collector's office, including the annual tax certificate sales that are the subject matter of this lawsuit.

6.

Defendant Charles W. Thomas is the Pinellas County Tax Collector. He is being sued in his official capacity for prospective declaratory and injunctive relief. As Tax Collector, Mr. Thomas's responsibilities include overseeing all aspects of tax collection handled by the Tax Collector's office, including the annual tax certificate sales that are the subject matter of this lawsuit.

**Overview of the Sale of Tax Certificates in Florida**

7.

The tax collector of a county has the authority and obligation to collect delinquent property taxes on real property located within the county, and to collect interest and costs, by the sale of tax certificates. A tax certificate, also known as a tax lien, is a statutory lien that secures unpaid delinquent real property taxes and which attaches to specific parcels of taxable real property owned by the delinquent taxpayer.

8.

Florida statutes require tax collectors like the Defendants sell tax certificates at public auctions, which are held on or before June 1 of each year. Tax certificates are sold at auction to the bidder willing to pay the amounts due to the tax collector and who will agree to receive the lowest rate of interest on any effort to redeem. The

taxpayer then has two years to redeem by paying the past-due taxes plus interest. If the taxpayer fails to redeem the property within two years, the purchaser of the tax certificate can then apply for a tax deed to the property.

9.

The auctioning of tax certificates enables local governments to timely collect taxes to fund expenditures. The sale also helps delinquent taxpayers by allowing their unpaid taxes to accrue interest at the rate awarded to the winning bidder, which in most cases falls far below the 18% statutory delinquency rate.

10.

At the public auctions of tax certificates conducted by Defendants, the vast majority of bids for tax certificates result in a tie among bidders who are willing to accept a .25% interest rate.

11.

As to the procedure for resolving tie bids, Florida Statutes Section 197.432(6) (emphasis added) provides, in relevant part:

> Each certificate shall be awarded to the person who will pay the taxes, interest, costs, and charges and will demand the lowest rate of interest, not in excess of the maximum rate of interest allowed by this chapter. The tax collector shall accept bids in even increments and in fractional interest rate bids of one-quarter of 1 percent only. ***If multiple bidders offer the same lowest rate of interest, the tax collector shall determine the method of selecting the bidder to whom the certificate will be awarded. Acceptable methods include the bid received first or use of a random-number generator.*** If a certificate is not purchased, the certificate shall be struck to the county at the maximum rate of interest allowed by this chapter.

12.

Defendants use a "random-number generator" as the method to select the winner among tie bids.

**Defendants' Group Bidding Rules Allow Sham Auctions**

13.

The lottery is supposed to ensure that every bidder has an equal chance to be awarded a tax certificate in the event of a tie bid.

14.

Defendants, however, have established a set of rules in each of their counties ("the Group Bidding Rules") that make a mockery of the tax certificate auction process and ensure that legitimate independent bidders, like Plaintiffs, have no chance to be awarded tax certificates in the event of a tie.

15.

The Group Bidding Rules allow a "Master Bidder" to replicate itself by creating literally hundreds of thousands of wholly owned sham entities formed for the sole purpose of bidding on tax certificates. The Master Bidder then causes its hundreds of thousands of affiliated sham entities to bid on the tax certificates, inevitably resulting in multiple tie bids. The Defendant Tax Collectors then "randomly" select the winner, but given that Master Bidders have flooded the auction with their affiliated sham entities, and have tens of thousands of bids for

each legitimate, independent bid made by bidders like the Plaintiffs, the random selection of the winner will almost always result in an award to a Master Bidder. Defendants facilitate this sham with a number of rules and policies that, individually and in combination, violate Florida law and violate Plaintiffs' constitutional rights. These rules and policies are explained in the next paragraphs.

16.

First, Defendants allow the Master Bidders to replicate themselves by recognizing, as legitimate "persons" entitled to bid on tax certificates, sham entities that have no assets, employees, bank accounts, or business – entities existing on paper only, formed for the sole purpose of gaming the tax certificate lottery system. The only thing that Defendants require that these sham entities possess is an IRS Employer Identification Number, called an "EIN."

17.

For a time, it was possible for a single corporation or individual to obtain an unlimited number of EINs in an extremely inexpensive, highly-automated on-line process. Many bidders did so, obtaining literally hundreds of thousands of EINs to assign to sham entities formed for the sole purpose of bidding on tax certificates in Florida under the Defendants' Group Bidding Rules.

18.

The IRS has now clamped down on this abuse, and revised its EIN application and issuance process to make it impossible to obtain numerous EINs. The IRS now

bans the use of EIN numbers for the purpose of bidding on tax certificates with remarkably specific instructions: "Employer Identification Numbers are issued for purposes of tax administration and are not intended for participation in any other activities (e.g. tax lien auction of sales, lotteries, etc.)"

19.

Defendants, however, still allow Master Bidders to use the hundreds of thousands of sham entities that obtained and use EINs contrary to IRS rules. Independent bidders like Plaintiffs, even if they were inclined to try to create numerous sham entities to bid on tax certificates, are not permitted to do so.

20.

The Group Bidding Rules also impose a deposit requirement upon bidders that drastically favors Master Bidders. Every bidder must first pay Defendants a deposit equal to ten percent of their intended purchases. In determining the amount of intended purchases, however, the Group Bidding Rules aggregate all of a Master Bidder's affiliates, drastically reducing the amount of the deposit, as the following example illustrates. Suppose Plaintiff WMAC and a Master Bidder each intended to purchase $5 million in tax certificates. Suppose further that the Master Bidder controlled 500,000 sham entities, each with their own EIN and each authorized, under the Group Bidding Rules, to bid upon and be awarded a tax certificate. Under the Group Bidding Rules, both Plaintiff WMAC and the Master Bidder would pay

the same deposit of $500,000, or 10% of their intended $5 million purchase. Under the Group Bidding Rules, the Master Bidder's $500,000 deposit would satisfy the deposit requirement for each of its 500,000 sham entities, resulting in a deposit of only $1 per sham entity. Thus, although a sham entity has the same chance of being awarded an auctioned tax certificate as WMAC, WMAC in this example must deposit $500,000 and each sham entity need only deposit $1.

21.

Finally, the Defendants – unlike most Florida tax collectors – do not enforce rules against collusive bidding. Indeed, the concept of non-collusion is antithetical to group bidding because the knowledge of each member of the group is imputed to the Master Bidder. The Master Bidder, as a matter of fact and as a matter of law, knows and makes every bid of each of its sham entities, which exist only on paper in any event. By not having, or not enforcing, any anti-collusion rules, Defendants defeat fair competition in the auction process.

22.

The net results of Defendants' Group Bidding Rules are astonishing and speak for themselves. In 2020 in Pinellas County, there were more than 3.7 million entities that bid on tax certificates, with more than 99.9% controlled by Master Bidders.

23.

In 2020, Pinellas County sold 12,559 tax certificates with a total face amount of $41,263,355.69. Of the 12,559 tax certificates that were sold, 11,839 were sold to bidders who had submitted tied bids at a .25% interest rate.

24.

The tie bids on the 11,839 tax certificates were awarded using Pinellas County's random selection process. Since the Master Bidders had flooded the auction with millions of bids from their sham subsidiaries, independent bidders like Plaintiff SSC8 had little hope of being awarded any tax certificates.

25.

Plaintiff SSC8 made a .25% bid on 1,266 tax certificates in Pinellas County in 2020 but was not awarded a single one.

26.

The net result of Defendants' Group Bidding Rules in Hillsborough County were similar. In 2020 in Hillsborough County, there were more than 3.7 million entities that bid on tax certificates, with more than 99.9% controlled by Master Bidders.

27.

In 2020, Hillsborough County sold 18,525 tax certificates with a total face amount of $52,406,551.94. Of the 18,525 tax certificates that were sold, 17,457 were sold to bidders who had submitted tied bids at a .25% interest rate.

28.

The tie bids on the 17,457 tax certificates were awarded using Hillsborough County's random selection process. Since the Master Bidders had flooded the auction with millions of bids from their sham subsidiaries, independent bidders like Plaintiff SSC8 or WMAC had little hope of being awarded any tax certificates in the event of a tie bid.

29.

In 2020, Plaintiff SSC8 made bids on 1,052 tax certificates in Hillsborough County that resulted in ties, at a .25% interest rate, but was not awarded a single one. Plaintiff WMAC in 2020 made bids on 7,423 tax certificates in Hillsborough County that resulted in ties, at a .25% interest rate, and also was not awarded a single one.

30.

Defendants' maintenance of the sham auction process through the enforcement of their Group Bidding Rules causes Plaintiffs' actual harm by taking from them their chance of being awarded a fair share of tax certificates with respect to which tie bids are made.

31.

Plaintiffs intend to bid on tax certificates in Pinellas County and Hillsborough County in 2021 and years following. Unless injunctive relief is granted, Defendants, in violation of Florida law and in violation of Plaintiffs' rights under the United

States Constitution, will continue to cause Plaintiffs' actual injury through their maintenance of the sham auctions enabled by their Group Bidding Rules.

**Count One: 42 U.S.C. § 1983 - Violation of Substantive Due Process**

32.

Plaintiffs incorporate Paragraphs 1 through 31 of this Complaint by reference as if fully restated herein.

33.

The Group Bidding Rules deprive Plaintiffs of substantive due process because they constitute an arbitrary and capricious exercise of power having no rational relationship to any legitimate state interest.

34.

Plaintiffs have a protectable interest in having a fair opportunity to purchase tax certificates. The Group Bidding Rules deprive Plaintiffs of that opportunity.

35.

The Group Bidding Rules cause the random selection process among tie bids to be a sham and deprive Plaintiffs of their opportunity to be awarded their fair share of tax certificates.

36.

Defendants have no legitimate or reasonable basis for the Group Bidding Rules: giving the Master Bidders such an unfair advantage in the random selection process does not do the Defendants, or the citizens of Hillsborough County and

Pinellas County, any good. In fact, conducting the Group Bidding Rules damages Hillsborough County and Pinellas County by discouraging potential unaffiliated bidders from participating in the auctions because they have no realistic chance of being awarded tax certificates in the event of a tie.

37.

The Group Bidding Rules also are contrary to the stated governmental interest of "ensuring due process and public confidence in a uniform, fair . . . collection of property taxes." See § 197.603, Florida Statutes.

38.

The Group Bidding Rules are also completely contrary to the laws and policies of the IRS. The IRS issues EINs for the purpose of tax administration only and specifically prohibits their use for bidding on tax certificates. Ignoring this sound policy, Defendants not only allow Master Bidders to use EINs for an unauthorized purpose, by doing so they favor Master Bidders over Independent Bidders, like the Plaintiffs, who do not use EINs improperly.

39.

Plaintiffs are accordingly entitled to an injunction prohibiting Defendants from enforcing the Group Bidding Rules.

**Count Two: 42 U.S.C. § 1983 - Violation of Equal Protection**

40.

Plaintiffs incorporate Paragraphs 1 through 31 of this Complaint by reference as if fully restated herein.

41.

The valuable opportunity to be awarded a tax certificate is something that Defendants must, under the Equal Protection Clause of the Fourteenth Amendment, either distribute equally or have a rational reason for not doing so.

42.

The Group Bidding Rules unlawfully discriminate between independent bidders like the Plaintiffs ("Independent Bidders"), on the one hand, and Master Bidders and their sham affiliates, on the other hand.

43.

By recognizing Master Bidders' affiliated sham entities as separate bidders entitled to be awarded a tax certificate, the Group Bidding Rules unlawfully disadvantage Independent Bidders by not giving them any fair opportunity to be awarded a tax certificate in the event of a tie bid.

44.

The Group Bidding Rules also disadvantage Independent Bidders by allowing Master Bidders and their affiliated sham entities to bid on tax certificates without requiring each sham entity to post a deposit equal to 10% of their intended purchase,

even though Defendants give each sham entity the opportunity to be awarded a tax certificate.

45.

Defendants have no reasonable basis for discriminating between Independent Bidders and Master Bidders. To the contrary, the Group Bidding Rules cause the tax certificate auctions in Hillsborough County and Pinellas County harm by discouraging new bidders from participating in the auctions because (a) almost all bids result in a tie and (b) they have no realistic chance of being awarded tax certificates in the event of a tie bid because of the number of sham entities affiliated with Master Bidders.

46.

The Group Bidding Rules are also completely contrary to the laws and policies of the IRS. The IRS issues EINs for the purpose of tax administration only and specifically prohibits their use for bidding on tax certificates. Ignoring this sound policy, Defendants not only allow Master Bidders to use EINs for an unauthorized purpose, by doing so they favor Master Bidders over Independent Bidders, like the Plaintiffs, who do not use EINs improperly.

47.

The Group Bidding Rules also are contrary to the stated governmental interest of "ensuring due process and public confidence in a uniform, fair . . . collection of property taxes." See § 197.603, Florida Statutes.

48.

The Group Bidding Rules violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

49.

Plaintiffs are accordingly entitled to an injunction prohibiting Defendants from enforcing the Group Bidding Rules.

**Count Three: Violation of Florida Law - Using an Unacceptable Method of Selecting Winner in the Event of a Tie**

50.

Plaintiffs incorporate Paragraphs 1 through 31 of this Complaint by reference as if fully restated herein.

51.

Section 197.432(6) states: "If multiple bidders offer the same lowest rate of interest, the tax collector shall determine the method of selecting the bidder to whom the certificate will be awarded. Acceptable methods include the bid received first or use of a random-number generator."

52.

Florida law further defines "random-number generator" as "a computational device that generates a sequence of numbers that lack any pattern and is used to resolve a tie when multiple bidders have bid the same lowest amount by assigning a

number to each of the tied bidders and randomly determining which one of those numbers is the winner." *See* 197.102(1)(e), Florida Statutes.

53.

Defendants' method of selecting the winning bidder using the random-number generator violates Florida law because it does not select the winning bid among "multiple bidders." It treats bids from each member of a bidding group as a separate bid, each entitled to a chance at the award. But there is nothing separate, or "multiple," about the bids that are generated by all of the affiliated members of a bidding group: the Master Bidder causes each affiliate to make the bid, knows what the bids will be (for the Defendants do not prohibit collusive bidding), pays the deposit for every bidder, and ends up paying for the tax certificate if any is ultimately awarded.

54.

A Master Bidder that makes the identical bid through thousands of affiliated members of the bidding group is not making "multiple bids" under Section 197.432(6); it is making a single bid. By recognizing bids from each member of a bidding group as a separate bid for purposes of the random selection of the winning bidder, Defendants are not using an acceptable method of selecting the bidder to whom the certificate will be awarded in violation of Section 197.432(6).

55.

Plaintiffs are accordingly entitled to an injunction prohibiting Defendants from treating affiliated members of a bidding group as separate bidders, each entitled to the same chance of an award, in the process of determining to whom a certificate will be awarded in the event of a tie bid.

**Count Four: Violation of Florida Law - Unreasonable Deposits**

56.

Plaintiffs incorporate Paragraphs 1 to 31 of this Complaint by reference as if fully restated herein.

57.

Section 197.432(7) states: "The tax collector may require payment of a reasonable deposit from any person who wishes to bid for a tax certificate."

58.

For a deposit to be "reasonable" under Section 197.432(7), the deposit has to be fairly and reasonably assessed so that similarly situated bidders pay the same amount or at the same rate.  For example, if applied to every bidder who would be given the opportunity to be awarded a certificate in the event of a tie, a requirement of a deposit of at least 10% of the bidder's anticipated purchases would be a reasonable deposit under Section 197.432(7).  If a deposit of at least 10% of the anticipated purchases were required of some bidders, but not of other bidders, the deposit would not be reasonable under Section 197.432(7).

59.

Defendants require Plaintiffs and other independent bidders to make a deposit of at least 10% of the Plaintiffs' intended purchases. Defendants do not, however, require each of the affiliated bidders to make a deposit of 10% of that bidders' intended purchases. Instead, Defendants allow Master Bidders to satisfy the deposit requirement for all of its affiliates in the aggregate, resulting in a deposit cost that is a fraction of the cost, per entity entitled by the Defendants to be awarded a tax certificate, as the cost levied upon Independent Bidders like the Plaintiffs. Defendants' deposit requirement, therefore, is not reasonable and therefore is in violation of Section 197.432(7).

60.

Plaintiffs are accordingly entitled to an injunction prohibiting Defendants from allowing Master Bidders to satisfy the deposit requirement by making a deposit for its affiliates that is less than the deposit that is being charged to Independent Bidders, like the Plaintiffs.

WHEREFORE, Plaintiffs pray for the following relief:

A. That Defendants be preliminarily and permanently enjoined from enforcing the Group Bidding Rules including, but not limited to, an injunctive relief prohibiting Defendants from (a) treating affiliated members of a bidding group as separate bidders, each entitled to the

same chance of an award, in the process of determining to whom a certificate will be awarded in the event of a tie bid or (b) allowing Master Bidders to satisfy the deposit requirement by making a deposit for its affiliates that is less than the deposit that is being charged to Independent Bidders, like the Plaintiffs;

B. That the Group Bidding Rules be declared to be in violation of the U.S. Constitution and Florida law;

C. That the Defendants be ordered pay Plaintiffs' reasonable litigation costs, including attorney's fees, pursuant to 28 U.S.C. § 1988; and,

D. That the Court order such other and further relief as the Court may deem appropriate in law or in equity.

This 22nd day of February, 2021.

/s/Nicole Deese Newlon
NICOLE DEESE NEWLON, FBN 832391
nnewlon@jclaw.com
JAMES JEFFREY BURNS, FBN 111395
jburns@jclaw.com
**JOHNSON, CASSIDY, NEWLON & DECORT, P.A.**
2802 N. Howard Avenue
Tampa, Florida 33607
Telephone: (813) 699-4859
Facsimile: (813) 235-0462

and

        BRUCE P. BROWN (*pro hac vice* application forthcoming)
bbrown@brucepbrownlaw.com
**BRUCE P. BROWN LAW LLC**
1123 Zonolite Road
Atlanta, Georgia 30306
Telephone: (404) 386-6856
*Lead Counsel*

*Counsel for Plaintiffs*